UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CLEORA I. GUILE, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 2:11CV40 JCH |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant United States of America's Motion for Summary Judgment, filed July 3, 2012. (ECF No. 40). The motion is fully briefed and ready for disposition.

**BACKGROUND**

On April 19, 2006, Plaintiff Cleora Guile went to see Dr. Timothy Herbst, D.D.S., for the first time, as a part of her tooth had broken off six months earlier. (Defendant's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("Defendant's Facts"), ¶ 1). Plaintiff returned on May 31, 2006, at which time she alleges Dr. Herbst "shocked her tongue," and drilled her tooth too deeply while preparing for the filling, causing bleeding. (Id., ¶¶ 2, 3; First Amended Complaint ("Compl."), PP. 1, 3). Plaintiff alleges Dr. Herbst then overfilled her cavity, and failed to check occlusion before sending her home. (Compl., PP. 1, 3).

On June 16, 2006, Plaintiff went to the emergency room, after feeling pain in her jaw, neck, and ear. (Defendant's Facts, ¶ 6). An emergency room doctor referred Plaintiff to Dr. Burchett, an ENT doctor. (Id., ¶ 7). Plaintiff saw Dr. Burchett on June 19, 2006, and he diagnosed her as having temporomandibular joint syndrome ("TMJ"). (Id., ¶ 8). On June 20, 2006, Plaintiff returned to Dr.

Herbst, who recommended either tooth extraction or a root canal. (Id., ¶ 10). Plaintiff could not afford to undergo a root canal, and ultimately decided to have two teeth extracted, including the one that prompted her initial visit to Dr. Herbst. (Id.).

Plaintiff scheduled the extractions for August 7, 2006. (Defendant's Facts, ¶ 11). She claims that in preparing to extract the teeth Dr. Herbst held her down against her will, and continued to inject into the site against her wishes, thereby causing permanent nerve damage. (Compl., P. 4). Despite this alleged assault, Plaintiff followed up with Dr. Herbst on August 15, and August 22, 2006. (Defendant's Facts, ¶ 11).

On March 27, 2007, Plaintiff saw Dr. Allen Sclaroff, an oral surgeon. (Defendant's Facts, ¶ 14). Plaintiff alleges Dr. Sclaroff informed her that Dr. Herbst had damaged her glossopharyngeal nerve through his negligent injection. (Compl., PP. 2-3).[1]

On October 1, 2008, Plaintiff filed suit against Dr. Herbst in the Circuit Court of Adair County, Missouri. (Cause No. 2:08CV64 DDN, ECF No. 1-3, PP. 2-3). The United States Attorney certified that Dr. Herbst was acting within the scope of his employment at the time of the incidents, pursuant to the Federally Supported Health Centers Assistance Act of 1992, Pub. L. 102-501. (Id., ECF No. 1-2, P. 2). The United States therefore removed Plaintiff's action to this Court, and sought leave to dismiss Dr. Herbst and substitute the United States of America as Defendant. (Id., ECF Nos. 1-2, 4, 10). In response to a motion to dismiss filed by Defendant, Plaintiff filed an administrative claim pursuant to the Federal Tort Claims Act ("FTCA") with the Department of Health and Human

---

[1] Dr. Sclaroff's hand-written notes from the visit recommend that Plaintiff see a different neurologist, and state "problems developed from dental injection." (Defendant's Facts, ¶ 14; Defendant's Exh. E). Dr. Sclaroff does not mention Dr. Herbst in his notes, nor does he opine that Dr. Herbst breached the standard of care in treating Plaintiff. (Id.).

Services on May 14, 2009. (Compl., P. 2). United States Magistrate Judge David D. Noce then dismissed Plaintiff's federal suit on May 19, 2009, as follows:

> As set forth on the record of the hearing held on March 13, 2009, because this court lacks subject matter jurisdiction because plaintiff Cleora Guile has not presented her claim under the Federal Tort Claims Act to the appropriate federal agency and the appropriate federal agency has not finally denied the claim of plaintiff, as required by 28 U.S.C. § 2675(a), with the consent of all the parties that the undersigned Magistrate Judge exercise plenary authority under 28 U.S.C. § 636(c),
>
> IT IS HEREBY ORDERED that the motion of the defendant United States to dismiss this action without prejudice (Doc. 6.) is sustained. The action is dismissed without prejudice.

(Cause No. 2:08CV64 DDN, ECF No. 13). According to Plaintiff, her agency action was dismissed on December 3, 2010, for failure to file paperwork in a timely manner. (Compl., P. 2).

Plaintiff filed the instant suit against the United States of America on May 25, 2011. (ECF No. 1). In her First Amended Complaint, filed June 15, 2011, Plaintiff alleges she suffered permanent injuries as a result of the negligent care she received from Dr. Herbst. (ECF No. 5). In response to a Court Order, Plaintiff filed an affidavit pursuant to Missouri Revised Statutes §538.225 on September 30, 2011, stating in relevant part as follows:

> I have obtained the written opinion of a legally qualified health care provider:
>
> Allen Sclaroff D.D.S., Diplomat-American Board of Oral and Maxillofacial Surgery @ 1040 N. Mason, Suite 207, Creve Coeur, Missouri 63141 (314-453-9705),
>
> satisfying the requirements of showing that the defendant healthcare provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or contributed to cause the damages claimed in the petition.

(ECF No. 18). Plaintiff has not asked Dr. Sclaroff to serve as an expert witness in this matter, however, and in fact has not spoken to him since her March 27, 2007, visit. (Defendant's Facts, ¶ 16; Defendant's Exh. K).[2]

As stated above, Defendant filed its Motion for Summary Judgment on July 3, 2012, claiming Plaintiff's Complaint must be dismissed (a) for failure to provide expert testimony, as necessary to establish her medical malpractice case, and (b) as untimely filed under the FTCA. (ECF No. 40).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

---

[2] During her deposition, Plaintiff testified that she was unable to provide the name of another medical provider who told Plaintiff her problems developed from the dental injection. (Guile Deposition, Defendant's Exh. A, P. 55).

- 4 -

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

In its Motion for Summary Judgment, Defendant first asserts Plaintiff's Complaint must be dismissed for failure to obtain an expert witness to testify on her behalf in this medical malpractice suit. In order to state a claim for medical malpractice under Missouri law[3], Plaintiff must establish the following three elements: "(1) proof that an act or omission of the defendant failed to meet the requisite medical standard of care, (2) proof that the act or omission was performed negligently, and (3) proof of a causal connection between the act or omission and the injury sustained by the plaintiff." Tompkins v. Kusama, 822 S.W.2d 463, 464 (Mo. App. 1991) (internal quotation marks and citation omitted). Defendant maintains that in the absence of expert medical testimony, Plaintiff can demonstrate neither the first element, that Dr. Herbst breached the standard of care in this case, nor the third element, that Dr. Herbst's allegedly negligent actions caused Plaintiff's injuries. Upon consideration, the Court agrees on both counts.

With respect to the first element, the Court finds Plaintiff presents no expert testimony tending to demonstrate that Dr. Herbst's conduct constituted a departure from the standard of skill and proficiency expected of a dentist under similar circumstances. See Haase v. Garfinkel, 418 S.W.2d

---

[3] Under the FTCA, the Court follows the substantive law of the state where the injury or incident complained of occurred. Shelton v. United States, 804 F.Supp. 1147, 1155 (E.D. Mo. 1992).

108, 112-113 (Mo. 1967).[4]  This omission is fatal to Plaintiff's case.  See Id.  In her response to Defendant's Motion for Summary Judgment, however, Plaintiff argues she should be allowed to proceed without an expert, under the doctrine of res ipsa loquitur.  (See ECF No. 52, PP. 7-9).  "Res ipsa loquitur is a rule of evidence whereby a submissible issue of negligence may be made by adducing a particular kind of circumstantial evidence, viz., by showing the fact of an occurrence which, because of its character and circumstances, permits a jury to draw a rebuttable inference, based on the common knowledge or experience of laymen, that the causes of the occurrence in question do not ordinarily exist in the absence of negligence on the part of the one in control."  Hasemeier v. Smith, 361 S.W.2d 697, 700 (Mo. banc 1962).  "Generally, the doctrine of res ipsa loquitur is not applicable in malpractice cases, and only in unusual circumstances may a physician or surgeon be found guilty of a failure to exercise the requisite degree of care in the absence of expert medical testimony tending to so prove."[5]  Id. (internal quotation marks and citation omitted).  The Court does not find such unusual circumstances exist in the present case, and thus will not apply the res ipsa loquitur rule to Plaintiff's claims.  See Id. at 700-701.  Therefore, in the absence of expert medical testimony, Plaintiff cannot establish that Dr. Herbst breached the standard of care in his treatment of Plaintiff.

With respect to the third element, causation, the Eighth Circuit has held as follows: "'When a party suffers a sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding and expert testimony is required.'"  Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 888 (8th Cir. 2006),

---

[4] In her response, Plaintiff claims Dr. Lawson, DDS Professor at UMKC, opined that Dr. Herbst was negligent in his treatment of Plaintiff.  (See ECF No. 52-1, P. 8).  The Court's review of Dr. Lawson's notes reveals no such opinion.  (See ECF No. 52-5).

[5] Unusual circumstances may include when a patient receives "an unusual injury; that is, for example, an injury to an unaffected portion of the body," or when, "it is alleged that a physician or surgeon left a foreign object in an operative cavity."  Hasemeier, 361 S.W.2d at 700.

quoting Echard v. Barnes-Jewish Hosp., 98 S.W.3d 558, 566 (Mo. App. 2002). See also Savage v. Christian Hospital Northwest, 543 F.2d 44, 47 (8th Cir. 1976) ("[W]hen the causal relation issue is not one within the common knowledge of laymen, causation in fact cannot be determined without expert testimony."). Plaintiff clearly alleges sophisticated injuries in this case, including permanent damage to her glossopharyngeal nerve, permanent speech limitations, chronic dry mouth, loss of feeling and taste on her tongue, TMJ, facial numbness and asymmetry, uneven pupils, double vision, and trigeminal neuralgia/neuropathy. (Compl., PP. 2-3, 4-7; ECF No. 52, P. 4). These are not the type of injuries whose proof of causation is within the common knowledge of lay persons. This is especially true in light of Plaintiff's complicated medical history, which includes goiter, G.E.R.D., herniated disc C3-C4, thoracic outlet syndrome, peripheral neuropathy, diabetes, and diabetic neuropathy. (See ECF Nos. 41-11, 52-23). Under these circumstances, causation may not be presumed, and Plaintiff was required to provide expert medical testimony to establish that Dr. Herbst's alleged negligence caused her injuries. See Smith, 436 F.3d at 888.

Plaintiff apparently attempts to cure the deficiency by attaching to her response an August 29, 2012, letter/final report from David Lardizabal, M.D., in which he states in relevant part as follows:

> Thank you for your visit on August 22, 2012. After reviewing your clinical history and neurological findings, my diagnosis for your neurological problem is left trigeminal neuropathy. There was a close temporal relationship of your left trigeminal neuropathy after the dental procedure. After excluding different causes of trigeminal neuropathy, it is highly probable that the dental procedure may have caused this neurological symptom.

(ECF No. 52-30). Based on this brief, vague statement[6], it appears Dr. Lardizabal may intend to offer expert testimony regarding the cause of at least one of Plaintiff's conditions.[7] Dr. Lardizabal was never disclosed as an expert witness, however, and pursuant to the Case Management Order entered in this matter, Plaintiff was required to disclose her expert witnesses and provide their reports no later than January 31, 2012. (ECF No. 21). The Court will not allow Plaintiff to circumvent its scheduling order, by naming an expert witness more than seven months after the disclosure deadline. See Smith, 436 F.3d at 889 (internal quotations marks and citation omitted) ("Rule 26(a)(2) imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.").[8]

Assuming without deciding that the Court would permit Dr. Lardizabal to testify as to his opinions without providing an expert report, in his role as Plaintiff's treating physician, the Court nevertheless finds his August 29, 2012, letter must be excluded as untimely. Dr. Lardizabal was not listed in Plaintiff's initial disclosures (see ECF No. 25), and it is unclear from the record whether

---

[6] The Court notes Dr. Lardizabal does not describe the "dental procedure" referenced in his report, nor does he specify the history and findings he reviewed before reaching his somewhat ambivalent conclusion.

[7] The Court's conclusion in this regard is bolstered by Plaintiff's own submission, in which she acknowledges she asked Dr. Lardizabal to review records of her care. (See ECF No. 52-1, P. 10).

[8] In light of the above ruling, the only expert medical testimony in this case was submitted by Defendant, stating in relevant part as follows:
> I, Mark William Aylward, D.D.S., after careful review of the medical and dental records regarding Cleora Guile, believe that no negligence has occurred and the standard of care was not breached by Dr. Timothy Herbst in treating Cleora I. Guile. In addition, I find no causal connection between Ms. Guile's current alleged symptoms and her dental treatment provided by Dr. Herbst between May 31, 2006 and August 7, 2006.

(See ECF No. 41-11, P. 1).

Plaintiff provided his identifying information in a supplemental disclosure. Furthermore, it is worthy of mention that in November, 2006, Dr. Lardizabal diagnosed Plaintiff with trigeminal neuropathy/neuralgia, "[e]tiology unknown." (See ECF No. 52-30, P. 3).[9] Dr. Lardizabal's most recent report, apparently containing a new opinion regarding etiology, was provided nearly three months after the close of discovery, and less than two months before the trial date in this matter.[10] Under these circumstances, the Court will not permit Dr. Lardizabal to testify as to his new findings, as to hold otherwise would necessitate a reopening of discovery at this late date, in order to allow Defendant to depose Dr. Lardizabal, and possibly to name a rebuttal expert witness. Plaintiff thus is left with no medical testimony, expert or otherwise, to support her claim of causation, and so Defendant's Motion for Summary Judgment must be granted.[11]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED that** Defendant United States of America's Motion for Summary Judgment (ECF No. 40) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 25th day of September, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[9] Dr. Lardizabal's November 15, 2006, treatment notes were provided to the Court as an attachment to Plaintiff's response to Defendant's Motion for Summary Judgment. Again, it is unclear whether Defendant had these notes in its possession prior to this submission.

[10] Even the examination upon which Dr. Lardizabal based his most recent report did not take place until August 22, 2012, more than two months after the close of discovery.

[11] In light of the Court's holding, it need not consider Defendant's assertion regarding the applicable statute of limitations.